KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR1166-W |
| Plaintiff, | ) Date: June 24, 2008 <br> ) Time: 9:00 a.m. |
| v. | ) Place: Courtroom 7 |
| FELIX HERNANDEZ-CHAVEZ (1), <br> HUGO MONTES-MARTINEZ (2), <br> MODESTA LUISA MAGANA (3), <br> JUAN JESUS LIMON (4), | ) The Honorable Thomas J. Whelan <br> ) **STATEMENT OF FACTS AND** <br> ) **MEMORANDUM OF POINTS AND** <br> ) **AUTHORITIES IN SUPPORT OF MOTIONS** |
| Defendants. | ) |
| _____ | ) |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Motions For Reciprocal Discovery and Leave to File Further Motions. These motions are based on the files and records of this case, together with the attached statement of facts.

//

//

**I**

**STATEMENT OF THE CASE**

On April 15, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment against Defendant Felix Hernandez-Chavez ("Defendant Hernandez"). The Indictment charges Defendant Hernandez with one count of possessing approximately 86.75 kilograms (191.25 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On April 15, 2008, Defendant Hernandez was arraigned on the Indictment and entered a plea of not guilty. On June 4, 2008, a federal grand jury in the Southern District of California returned a two-count Superseding Indictment against Defendants Hernandez, Hugo Montes-Martinez ("Defendant Montes"), Modesta Luisa Magana ("Defendant Magana"), and Juan Jesus Limon ("Defendant Limon). Count One of the Superseding Indictment charges Defendants Hernandez and Montes with possessing approximately 86.75 kilograms (191.25 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Count Two of the Superseding Indictment charges Defendants Montes, Magana, and Limon with possessing less than 50 kilograms, to wit, approximately 105.40 kilograms (231.89 pounds) of marijuana, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The United States hereby files the following amended motions for reciprocal discovery and leave to file further motions.

**II**

**STATEMENT OF FACTS**

**A.   OFFENSE CONDUCT ON MARCH 14, 2008**

**1.   Events Leading to Seizure of Marijuana**

On March 14, 2008 at approximately 7:15 p.m., U.S. Border Patrol Agent Clark was performing his official duties at the S-2 checkpoint near Ocotillo, California. At that time, a 2005 red Ford F-150 pickup truck, with New Mexico license plate number "147NGJ," approached the inspection area with two visible occupants. Agent Clark asked Defendant Hernandez, the driver of the truck, and the passenger, Defendant Montes, to state his citizenship. Agent Clark noticed that the rear seats of the truck were lifted and he saw two large bundles underneath the seats. Agent Clark continued to talk with the occupants of the truck, when Agent Santana found another large bundle, partially concealed, in the bed area of the truck. Defendant gave Agent Clark consent to search the truck. Clark seized all three of the large bundles, contained a green, leafy substance that appeared to marijuana. The three large

bundles appeared to be improvised backpacks wrapped in green nylon. The three large bundles weighed approximately 86.75 kilograms (191.25 pounds). Border Patrol agents also found a Google satellite map, which depicted the Shockey Truck Trail area. An "X" was marked on the Shockey Truck Trail, and a circle mark "O" was placed just south of Calle Loreto and Las Montanas. Defendants Hernandez and Montes were arrested and transported to station for processing.

### 2. Defendant Hernandez's Post-Miranda Statements

At approximately 12:15 a.m., on March 15, 2008, DEA Agent Butler advised Defendant Hernandez, in the Spanish language, his <u>Miranda</u> rights, using a DEA-13B Card. Defendant Hernandez acknowledged that he understood his <u>Miranda</u> rights, and he agreed to waive those rights and speak with the agents without the presence of counsel.

Defendant Hernandez admitted that he was hired by a man he knew as "Guero," who agreed to pay Defendant Hernandez approximately 3,000 pesos to transport three "suitcases" from Calexico to El Cajon. Defendant Hernandez did not question "Guero" about the contents of the "suitcases," but he thought the "suitcases" contained something bad. Defendant Hernandez described the strong odor inside the cab of the truck as similar to alfalfa. Defendant Hernandez admitted knowing his passenger, Defendant Montes, for approximately three weeks. Defendant Hernandez said Defendant Montes was riding with him because Defendant Hernandez was unfamiliar with the area and Defendant Montes knew how to drive from Calexico to El Cajon.

### 3. Defendant Montes' Post-Miranda Statements

At approximately 12:45 a.m., on March 15, 2008, DEA Agent Butler advised Defendant Montes, in the Spanish language, his <u>Miranda</u> rights, using a DEA-13B Card. Defendant Montes acknowledged that he understood his <u>Miranda</u> rights, and he agreed to waive those rights and speak with the agents without the presence of counsel.

Defendant Montes said he was contacted by his uncle in Mexicali, Mexico, to come to Mexico and work at a palm tree farm. Defendant Montes traveled from Borrego Springs, California, to Tecate, Mexico, where he took the bus to Mexicali, Mexico. Defendant Montes called his uncle from a gas station in Mexicali, and his uncle told him he did not need his help. Defendant Montes said his uncle advised him to look for a ride back to Borrego Springs. Defendant Montes then met Defendant

1 Hernandez, and Defendant Montes stated that he was given a ride by Defendant Hernandez, who he
2 claimed he never met before, from Mexicali, Mexico, to Borrego Springs, California. When Defendant
3 Montes got into Defendant Hernandez's truck, Defendant Montes said he could smell a strong odor of
4 marijuana.

### 4. Contents of the Three Bundles

6 Border Patrol agents noticed that the three bundles contained a green, leafy substance that, based
7 on their training and experience, appeared to be marijuana. On March 15, 2008, DEA Agent Butler, as
8 witnessed by DEA Agent Camacho, field-tested the green, leafy substance in the three large bundles,
9 and the substance tested positive for marijuana.

## B. OFFENSE CONDUCT ON MAY 8, 2008

### 1. Events Leading to Seizure of Marijuana

12 On May 8, 2008, Border Patrol agents were conducting anti-smuggling operations targeting the
13 Shockey Truck Trail, which is located 13 miles east of Tecate, California Port of Entry, is a notorious
14 smuggling corridor for illegal aliens and narcotics, and spans 6 miles from California State Route 94
15 to the United States/Mexico international border.

16 At approximately 9:00 a.m., Border Patrol Agent P. Robinson observed a burgundy Nissan
17 Maxima ("Maxima") approach the intersection of Route 94 and Shockey Truck Trail. The driver of the
18 Maxima honked three times and turned down the Shockey Truck Trail. Shortly thereafter, a green
19 Chevrolet Malibu ("Malibu") approached the same intersection and turned down the Shockey Truck
20 Trail. Agent Robinson observed the passengers from the Malibu and Maxima switch vehicles. Agent
21 Robinson also observed that the windows of the driver side of the Malibu and Maxima were down and
22 Agent Robinson could hear the occupants of the two cars speaking to each other. Agents observed the
23 Maxima and Malibu exit the Shockey Truck Trail and leave the area via Route 94.

24 At approximately 9:45 a.m., Agent M. Saclarides observed the Malibu traveling again on
25 Route 94 and enter the Cameron Corners strip mall and park. Agent Saclarides requested a records
26 check on the license plate of the Malibu. Agent Saclarides learned that the car was registered to
27 "Viviana Magana." Agent Miele notified other Border Patrol agents that "Viviana Magana" was a
28 known registrant of a prior smuggling vehicle.

At approximately 10:25 a.m., Agent Robinson observed the Malibu, which was driven by a female, again turned off of Route 94 and onto the Shockey Truck Trail. Agent Robinson observed the car stop, the passenger exit the car, walk to the front of the car, and yell loudly. The passenger got back into the car and the car continued south on the Shockey Truck Trail out of Agent Robinson's sight.

At approximately 10:40 a.m., Agent Robinson observed the Malibu traveling north on the Shockey Truck Trail toward Route 94. Agent Robinson saw two visible occupants in the car – a male driver and female passenger. The Malibu passed by Agent Miele and he followed the car along Route 94. Based on the totality of the circumstance – the Border Patrol agents' knowledge that the Shockey Truck Trail is used for illegal aliens and narcotics smuggling, the stopping of the cars and honking in a known smuggling corridor, the tandem driving and communication between the Maxima and Malibu, the recognition that the registered owner of the Malibu was a known registrant of a smuggling vehicle, and the fact that the car appeared heavier in the rear despite having only two visible occupants – Agent Miele believed the Malibu was transporting concealed illegal aliens and requested a marked Border Patrol vehicle to pull over the Malibu.

At approximately 10:55 a.m., Agent E. Pepe activated his emergency lights and sirens and the Malibu yielded along Route 94. Agent Pepe observed that the Malibu was driven by a male, later identified as Juan Jesus Limon, and had a female passenger in the front seat, later identified as Modesta Luisa Magana, and a male passenger slouched in the rear seat, later identified as Hugo Montes-Martinez. Defendant Limon told Agent Pepe that there was no one in the trunk and gave consent to search the trunk. Border Patrol agents found two large improvised backpacks and smelled a powerful odor of marijuana. Each backpack, one green nylon mesh and one red, white and blue checkered nylon, contained several individual packages wrapped in tan packaging tape. Nine packages were removed from the two backpacks, which weighed approximately 47.10 kilograms (103.61 pounds). Agents confirmed that the substance in the backpacks was marijuana.

Border Patrol agents also searched the interior of the Malibu. Border Patrol agents found a key ring with a Nissan key on the seat where Defendant Magana was sitting in the Malibu. Border Patrol agents located the burgundy Nissan Maxima that had been spotted earlier that morning with the Malibu in the parking lot at the Golden Acorn Casino.

Border Patrol agents also found a Google satellite map, which depicted the Shockey Truck Trail area and had a route marked in blue ink pen leading south on the Shockey Truck Trail to Calle Loreto, then breaking east to Las Montanas. An "X" was marked in the brush south of Las Montanas near a wooden gate. Agents, utilizing narcotics detector dogs, searched the area depicted on the map, and found two more large improvised backpacks, similar to the ones recovered from the trunk of the Malibu, in the brush. One of the backpacks was made of the same green nylon mesh as the one found in the Malibu. Both backpacks also had a strong odor of marijuana and contained a green, leafy substance. These two large backpacks contained ten individual packages, which weighed approximately 57.30 kilograms (128.28 pounds). Agents confirmed that the substance in the backpacks was marijuana.

Through further investigation, agents determined that the Malibu was registered to "Viviana Magana," who is the sister of Defendant Magana. In March 2007, Border Patrol agents arrested Viviana Magana in the Malibu for transporting approximately 110.45 kilograms (243 pounds) of marijuana. In addition, agents determined that the Maxima was registered to "Queena Rapaela Limon," who is related to Defendant Limon.

### 2.      **Statements Made by Defendants to Each Other While in Custody**

On May 8, 2008, at approximately 11:50 a.m., while Defendants Montes, Magana, and Limon were held at the San Ysidro Resident Office lock-up area, agents overheard a conversation between Defendants. Defendant Limon told Defendant Magana that Defendant Montes "needs to do the right thing." Defendant Limon suggested to Defendant Magana that they "throw it all on Hugo [Montes]." Defendant Magana responded, "Right." Defendant Limon said, "Sounds like a plan." Defendant Magana told Defendant Limon that if she "stayed at the ranch, [they] would not be here, because [she didn't] think [Defendant Limon] would have it."

At approximately 12:10 p.m., Defendant Limon asked Defendant Montes whether he smoked marijuana, and Defendant Montes said "yesterday." Defendant Magana then said that she planned to smoke some marijuana once she gets home. Defendant Limon said, "Don't worry about it, we're gonna go home . . . watch."

//

//

### 3. **Defendant Limon's Post-Arrest Statements**

On May 8, 2008, at approximately 3:23 p.m., DEA Agent J. Pokryfke advised Defendant Limon of his Miranda rights, using a DEA-13A Card. Defendant Limon acknowledged that he understood his Miranda rights, and he agreed to waive his rights and speak with the agents without an attorney.

Defendant Limon admitted he was involved in the transportation of marijuana that was seized earlier that day. Defendant Limon received a call from Defendant Magana's stepfather "Beto" asking him to drive to the area of the Golden Acorn Casino and follow Defendant Magana back to San Diego because Defendant Magana would be transporting marijuana in her car. "Beto" offered to pay $1,000.00 to Defendant Limon to follow Defendant Magana back to San Diego. Defendant Limon met Defendant Magana near State Route 94 and the Shockey Truck Trail, and they tried to find the marijuana. Having no luck and running low on gas, Defendant Limon drove his Maxima to the Golden Acorn Casino and parked it. Defendant Limon got in Defendant Magana's Malibu and they drove back to the Shockey Truck Trail. Defendant Limon said he used the Google satellite map that was found in the Malibu to locate the pickup point of the marijuana. Defendant Limon said several unknown Hispanic males attempted to load the marijuana in the trunk of the Malibu, but there was not enough room for all of the marijuana to fit in the trunk.

### 4. **Defendant Magana's Spontaneous Statements**

On May 8, 2008, at approximately 4:21 p.m., DEA Agent Pokryfke advised Defendant Magana of her Miranda rights, using a DEA-13A Card. Defendant Magana acknowledged that she understood her Miranda rights, and she invoked her rights not to speak with agents without an attorney.

Agent Pokryfke did not ask Defendant Magana any incriminating questions. Agent Pokryfke proceeded to ask biographical questions only. During the biographical questioning, Agent Pokryfke asked Defendant Magana about her tattoos. Defendant Magana showed Agent Pokryfke a tattoo of hands praying just above her right knee. Defendant Magana and Agent Pokryfke got into a brief discussion of religion and being honest. Agent Pokryfke told Defendant Magana that after she had a chance to speak to her attorney and if she decided to tell her side of the day's events, she should tell the truth. Defendant Magana said she would be honest, and then added that the only reason she "did this was because [she had] tickets to pay off." Agent Pokryfke did not respond to her comment.

### 5. **Defendant Montes' Post-Arrest Statements**

On May 8, 2008, at approximately 4:36 p.m., Border Patrol Agent J. Roa-Zempoal advised Defendant Montes, in the Spanish language, his Miranda rights, using a DEA-13B Card. Defendant Montes acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the agents without the presence of counsel.

Defendant Montes said he received a phone call from "El Beto," who told Defendant Montes he need him to assist two individuals in picking up a load of marijuana near Campo. Defendant Montes was driven to a gas station in Cameron Corners strip mall, where he met Defendants Limon and Magana. Defendant Montes got into the Malibu and began guiding them to an area where he had previously picked up marijuana. Defendant Montes said they traveled on the Shockey Truck Trail to a dirt road and stopped near a broken down vehicle. Defendant Montes said two individuals came out of the brush and mentioned Defendant Magana's name. Once her identity was confirmed, the two individuals loaded the marijuana into the trunk of the Malibu. Defendant Montes added that he was also supposed to fill up the Maxima, parked at the Golden Acorn Casino, with gas and drive it back to San Diego. Defendant Montes said the marijuana was to be delivered to Escondido, where an individual would pay the load drivers their smuggling fee.

## III

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.  MOTION FOR RECIPROCAL DISCOVERY

The United States hereby requests Defendants Hernandez, Montes, Magana, and Limon deliver all material to which the United States may be entitled under Fed. R. Crim. P. 16(b) and 26.2.

### 1. **Defendant's Disclosures Under Fed R. Crim. P. 16(b)**

The United States has voluntarily complied and will continue to comply with the requirements of Fed. R. Crim. P. 16(a). As of the date of this Motion, the United States has produced to each Defendant approximately 186 pages of discovery (including reports of the arresting agents, criminal history reports, photographs of the car and marijuana seized). As of the date of this Motion, the United States has **not** received any reciprocal discovery from Defendants. Therefore, the United States invokes Fed. R. Crim. P. 16(b), requiring that reciprocal discovery be provided to the United States.

1  The United States hereby requests Defendants permit the United States to inspect, copy, and
2 photograph any and all books, papers, documents, photographs, tangible objects, or make copies of
3 portions thereof, which are within the possession, custody or control of Defendants and which
4 Defendants intend to introduce as evidence in his case-in-chief at trial.

5  The United States requests that it be permitted to inspect and copy or photograph any results or
6 reports of physical or mental examinations and of scientific tests or experiments made in connection
7 with this case, which are in the possession or control of Defendants, which he intends to introduce as
8 evidence-in-chief at the trial, or which was prepared by a witness whom Defendants intend to call as
9 a witness. Because the United States will comply with Defendants' request for delivery of reports of
10 examinations, the United States is entitled to the items listed above under Fed. R. Crim. P. 16(b)(1).
11 The United States also requests that the Court make such order as it deems necessary under Fed. R.
12 Crim. P. 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

13 **2.    Witness Statements Under Fed. R. Crim. P. 26.2**

14  Fed. R. Crim. P. 26.2 requires the production of prior statements of all witnesses, except a
15 statement made by Defendants. Fed. R. Crim. P. 26.2 requires reciprocal production of statements, in
16 accordance with the Jencks Act.

17  The timeframe established by Fed. R. Crim. P. 26.2 requires the statement to be provided after
18 the witness has testified. In order to expedite trial proceedings, the United States hereby requests
19 Defendants be ordered to supply all prior statements of defense witnesses by a reasonable date before
20 trial to be set by the Court. Such an order should include any form in which these statements are
21 memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

22 **B.    MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

23  Should new information or legal issues arise, the United States respectfully requests the
24 opportunity to file such further motions as may be appropriate.

25 / /
26 / /
27 / /
28 / /

# IV

## **CONCLUSION**

For the foregoing reasons, the United States requests the Court grant the United States' Amended Motions for Reciprocal Discovery and Leave to File Further Motions.

DATED: June 17, 2008

    Respectfully submitted,

    KAREN P. HEWITT
    United States Attorney

    /s/ *Joseph J.M. Orabona*
    JOSEPH J.M. ORABONA
    Assistant United States Attorney